Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, affirms Opinion and Award of the Deputy Commissioner, with some modification.
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as an executed Pre-Trial Agreement as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times herein.
3. American Manufacturers Mutual Insurance Company was the workers compensation carrier on risk at all times relevant herein.
4. Plaintiffs average weekly wage will be determined from the Form 22 Statement of Days Worked and Earnings of Injured Employee submitted at the hearing before the deputy commissioner.
5. Plaintiff was injured by accident while in the course and scope of his employment with defendant-employer on 15 August 1996. Plaintiffs last day of employment with defendant-employer was 23 November 1996.
6. That the issues to be determined from this hearing are as follows:
 a) Whether plaintiff was disabled or in need of medical treatment after 23 November 1996 as a result of his compensable injury of 15 August 1996?
 b) If so, what, if any, additional workers compensation benefits is plaintiff entitled to receive as a result of the compensable injuries sustained?
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was a forty-one year old man at the time of the hearing before the deputy commissioner. He was employed as head day cook and trainer for defendant-employer at a Kentucky Fried Chicken restaurant.
2. On 15 August 1996, plaintiff was carrying a heavy tray of chicken from a cooler when he slipped, fell, and landed on his buttocks. He also struck his head and back. Plaintiffs supervisor was present and witnessed the fall.
3. Due to the pain he was experiencing in his head and back, plaintiff went to Cape Fear Valley Medical Center ER when he left work. His condition was diagnosed as acute lumbar strain, right temporal scalp abrasion, and muscular strain to the right pectoralis major muscle group. Plaintiff was taken out of work for twenty-four hours and placed on light duty for three days.
4. Plaintiff returned to work on 19 August 1996 but continued to experience pain in his back and head. Plaintiff returned to the hospital on 19 August 1996 and was placed on light duty with no lifting, no prolonged standing or walking, and no climbing, bending, or stooping. On 28 August 1996, plaintiff was continued on light duty with a lifting restriction of twenty pounds. Plaintiff was released to return to his regular duties without any restrictions on 11 October 1996.
5. Plaintiff continued to work for defendant-employer until 23 November 1996, although he may have missed an occasional day as a result of back pain. At that time, plaintiff ended his employment with defendant-employer because he was unable to perform his job duties due to back pain resulting from the fall and because his hours were significantly reduced. There was no testimony from defendant-employer.
6. Plaintiff has an automotive technician degree and substantial experience as an automotive mechanic and "body man. After leaving his employment with defendant-employer, plaintiff went to work for Earl Scheib Auto Painters earning between $400.00 and $450.00 per week. Plaintiff worked in this position for just a few days before he and the rest of the crew were fired for management reasons. Due to the limited period of time plaintiff held this position, it is unclear whether plaintiff would have been physically able to perform the position as required. The record does indicate that increased physical activity tended to exacerbate plaintiffs condition.
7. After losing the auto painting job, plaintiff obtained a position with Industrial Loss Prevention as a security guard, and worked until the end of December 1996 or early January 1997. Plaintiff was initially placed on car patrol, but he was moved to a foot patrol position when several vacancies became available. Plaintiff was unable to perform the security guard position on foot due to his back pain and right leg pain. As a result, plaintiff ended his employment with Industrial Loss Prevention.
8. Following his job with Industrial Loss Prevention, plaintiff remained unemployed throughout 1997 due to his back condition which resulted from the fall on 15 August 1996. The medical records support complaints of "unrelenting pain throughout 1997.
9. In October 1998, plaintiff obtained employment as a mechanical advisor for Briggs and Sons Tire. On 2 December 1998, plaintiff was lifting a tire and experienced recurrent back pain, dropped the tire and sustained a serious cut to his finger. Plaintiff did not return to work for Briggs and Sons, partly due to the finger injury but also because he was being asked to perform tasks that aggravated his back condition.
10. Continued back pain resulting from the fall prevented plaintiff from returning to work after 2 December 1998. By March 1999, plaintiff was using a cane due to back pain and leg weakness.
11. Plaintiff continued to experience pain and weakness but was unable to afford medical treatment other than sporadic treatment at the emergency room at Cape Fear Valley Medical Center. A June 1997 MRI revealed a herniated disc involving L4-5 and L5-S1. Plaintiff had pain radiating into his legs and experienced incidents of urinary incontinence.
12. On 12 January 1998, plaintiff sought treatment from Sampath V. Charya, M.D., for low back discomfort with pain radiating into his lower extremities, neck pain, and intermittent headaches. Dr. Charya ordered an MRI of plaintiffs neck and lumbar spine and a CT Scan. The MRI revealed a disc problem at C5-C6, along with disc extension and extrusion at L4-L5. Dr. Charya referred plaintiff to Carol Wadon, M.D., a neurosurgeon, but defendant-carrier denied authorization of treatment by Dr. Wadon.
13. Dr. Charya opined, and the Commission finds, that plaintiffs back condition and related problems were related to his fall at defendant-employers restaurant on 15 August 1996.
14. Plaintiffs average weekly wage on 15 August 1996 was $113.68 per week, yielding a compensation rate of $75.79 per week.
15. Plaintiff has not reached maximum medical improvement. Plaintiff is in need of further medical treatment as a result of the fall on 15 August 1996.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 15 August 1996, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer. G.S. 97-2(6).
2. As a result of the injury by accident on 15 August 1996, plaintiff is entitled to receive total disability benefits from 23 November 1996 and continuing until plaintiff returns to work or until further order of the Commission, except as follows: Plaintiff is not entitled to disability benefits when he earned greater than pre-injury wages at Earl Scheib Auto Painters; and plaintiff is entitled to partial disability benefits for those periods when he earned less than pre-injury wages. G.S. 97-29,97-30.
3. Plaintiff is entitled to medical expenses incurred, or to be incurred, as may be reasonably required to effect a cure, provide relief, or lessen plaintiffs period of disability. G.S. 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorneys fees hereinafter provided, defendants shall pay plaintiff compensation benefits at the rate of $75.79 per week beginning 23 November 1996 and continuing until plaintiff returns to work or until further order of the Commission, except for the period when plaintiff worked at Earl Scheib Auto Painters and the periods when plaintiff is awarded temporary partial disability benefits as provided in paragraph 2 of this Award.
2. Subject to attorneys fees, defendants shall pay plaintiff compensation benefits at the difference between $75.79 and two-thirds of his wages earned while working at Industrial Loss Prevention and Briggs Sons Tire.
3. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury when bills for same have been submitted to and approved by the Commission, for such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief or lessen plaintiffs period of disability.
4. A reasonable attorneys fee of twenty-five percent of the compensation due plaintiff under this Award is approved for plaintiffs counsel and shall be paid as follows: twenty-five percent of the accrued amount due plaintiff shall be deducted and paid directly to plaintiffs counsel. Thereafter, plaintiffs counsel shall receive every fourth compensation check.
5. At the time of the evidentiary hearing, plaintiff had not reached maximum medical improvement. In the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing to resolve any such dispute at the appropriate time.
6. Defendants shall pay the costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/_______________ LAURA K. MAVRETIC COMMISSIONER